# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN, a Division of the Rail Conference of the International Brotherhood of Teamsters, | : : : : : | Case No.: _____ |
| Plaintiff, | : : | Hon. _____ |
| v. | : : | (Jury Trial Demanded) |
| NORFOLK SOUTHERN RAILWAY COMPANY, | : : : | |
| Defendant. | : | |

**PLAINTIFF'S VERIFIED COMPLAINT
FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF,
<u>DECLARATORY RELIEF AND DAMAGES</u>**

Plaintiff Brotherhood of Locomotive Engineers and Trainmen ("BLET" or "Union"), a division of the Rail Conference of the International Brotherhood of Teamsters, for its verified complaint against Defendant Norfolk Southern Railway Company ("NSR" or "Carrier") hereby states:

**JURISDICTION AND VENUE**

1. This is an action for injunctive relief, declaratory judgment and other appropriate relief brought pursuant to the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.,* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

2. This action arises under the RLA, an Act of Congress regulating commerce, and, therefore, the Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

3. Venue is proper in the Northern District of Ohio, pursuant to 28 U.S.C. § 1391(b)(1), (b)(2) and (c)(2), because Defendant resides in this judicial district, conducts substantial operations in this district, and a substantial number of the events giving rise to this Complaint occurred in or relate to operations within the territorial confines of this Court's jurisdiction.

**PARTIES**

4. Plaintiff BLET is an unincorporated labor organization with headquarters in Independence, Ohio. It is the exclusive collective bargaining representative for employees of Defendant in the craft or class of Locomotive Engineers (also known as "engineers"). It is a "representative" within the meaning of Section 1, Sixth of the RLA, 45 U.S.C. §151, Sixth. The collective bargaining agreements that govern the employees involved in this dispute are administered by three BLET General Committees of Adjustment ("GCA"), the NS Northern Lines GCA, the NS Eastern Lines GCA and the NS Southern Lines GCA, which are also all unincorporated labor organizations. The principal officer of each GCA is known as the General Chairman ("GC").

5. NSR is a corporation engaged in the interstate transportation of goods by rail and is a "carrier" as defined by Section 1, First of the RLA, 45 U.S.C. § 151, First. NSR has its corporate headquarters in Atlanta, Georgia and operates within this judicial district.

**FACTS**

6. BLET and NSR are parties to several collective bargaining agreements that govern the rates of pay, rules, and working conditions of NSR's engineer employees represented by the Union. The collective bargaining agreement applicable to the instant dispute became effective February 21, 2015, and is attached as Exhibit A ("2015 CBA").

7. The 2015 CBA became amendable on December 31, 2019. On November 1, 2019, the General Chairmen served an RLA Section 6 notice on Defendant to initiate the statutory collective bargaining process for amending the 2015 CBA. The parties have been engaged in negotiations since February 26, 2020, but have not reached an agreement to amend the 2015 CBA.

8. Article V of the 2015 CBA is entitled "PREDICTABLE WORKFORCE SCHEDULING" ("PWS"). The PWS provision of the 2015 CBA established a new and exclusive method of assigning work to engineers. The purpose of PWS is set forth in the first paragraph of Article V, which states:

> Predictable Workforce Scheduling (PWS) *will serve as the exclusive method to assign engineers* on a weekly cycle based on seniority, qualifications and job preferences. PWS permits engineers to select jobs weekly and provides engineers predictable scheduling and income stability because their job assignments cannot be changed until the next weekly cycle.

(Exhibit A at 7) (emphasis added).

9. Pursuant to Article V of the 2015 CBA, PWS is accomplished using an electronic database of "all engineer assignments, including pools and extra boards," that must be updated by NSR no later than 11:59 p.m. each Tuesday for the following week. Engineers may then update their assignment preferences for the following week up to 10:00 p.m. each Wednesday. NSR's Crew Management is then required to "evaluate the assignments and [engineer] preferences and post engineer assignments for the following week no later than 12:01 p.m. each Thursday." (Exhibit A at 7).

10. By the plain and unambiguous terms of Article V of the 2015 Agreement, PWS is the sole and "exclusive method to assign engineers," and NSR is not permitted to force engineers to accept any assignments other than those assigned through the PWS process. Further, the only

assignments that are permitted to be made through PWS and the only assignments that have ever been made through PWS are assignments to work as engineers on NSR locomotives.

11. Conductors at NSR are part of the craft or class of Train Service Employees and are represented by the International Association of Sheet Metal, Air, Rail and Transportation Workers, Transportation Division ("SMART-TD"). Conductors and conductor assignments are covered by collective bargaining agreements solely between SMART-TD and NSR that control and detail the terms and conditions of employment for such employees. The BLET is not a party to any of those agreements.

12. Even though NSR and the BLET have agreed in the 2015 CBA that PWS is the "exclusive method to assign engineers" and that such assignments are required to be "engineer" assignments, NSR has begun forcing engineers represented by the BLET to work as conductors in conductor assignments that were not and have never been made through the PWS process.

13. In response to NSR's actions in forcing engineers to work as conductors and to accept conductor assignments that were made outside the PWS process under the threat of discipline, up to and including termination of employment, all three BLET GC wrote letters to NSR demanding that it immediately cease and desist from forcing engineers to work as conductors and demanding that NSR adhere to the PWS provisions of the 2015 CBA as the exclusive method of assigning engineers. NSR has responded to these demands in writing and stated its refusal to adhere to the PWS provision of the 2015 Agreement, its refusal to cease assigning engineers to work as conductors, and its refusal to cease forcing engineers to accept conductor assignments made outside the PWS process.

14. Until recently, in the nearly six years that PWS has been in effect under the 2015 Agreement, engineers have never been forced to accept conductor assignments.

15. NSR's knowing and willful failure to adhere to the 2015 CBA and to use PWS as the exclusive method of assigning work to engineers constitutes a clear unilateral change by the NSR in the term and conditions of employment of employees in contravention of the 2015 CBA and represents a "major dispute" under the RLA.

16. For the above reasons, a breach of the statutory status quo with respect to the 2015 CBA has occurred and is continuing to occur, and/or further breaches of the same have been threatened and will occur, unless and until injunctive relief is granted.

## CAUSES OF ACTION

### COUNT I
### (Violation of Section 6 of the RLA, 45 U.S.C. § 156)

17. The allegations of paragraphs 1 through 16 are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

18. Section 6 of the RLA, 45 U.S.C. § 156, provides:

> Carriers and representatives of the employees shall give at least thirty days' written notice of an intended change in agreements affecting rates of pay, rules, or working conditions, and the time and place for the beginning of conference between the representatives of the parties interested in such intended changes shall be agreed upon within ten days after the receipt of said notice, and said time shall be within the thirty days provided in the notice. In every case where such notice of intended change has been given, or conferences are being held with reference thereto, or the services of the Mediation Board have been requested by either party, or said Board has proffered its services, rates of pay, rules, or working conditions shall not be altered by the carrier until the controversy has been finally acted upon, as required by section 155 of this title, by the Mediation Board, unless a period of ten days has elapsed after termination of conferences without request for or proffer of the services of the Mediation Board.

19. RLA Section 6 provides that carriers shall not alter the terms of a collective bargaining agreement or working conditions except as provided in Section 6, which requires express notice and bargaining during the amendable period set forth by parties.

20. Defendant NSR did not amend the 2015 CBA pursuant to Section 6 bargaining under the RLA, but instead unilaterally and unlawfully altered the agreement by forcing engineers to work as conductors and, thus, altering rates of pay, rules, or working conditions in continuing violation of Section 6 of the Act.

## COUNT II
### (Violation of Section 2, Seventh of the RLA)

21. The allegations of paragraphs 1 through 20 of the Complaint are incorporated by reference pursuant to Fed. R.Civ. P. 10(c).

22. Section 2, Seventh of the RLA, 45 U.S.C. §152, Seventh, states:

> No carrier, its officers, or agents shall change the rates of pay, rules, or working conditions of its employees, as a class, as embodied in agreements except in the manner prescribed in such agreements or in section 156 of this title.

23. The continuing acts and conduct by Defendant NSR of forcing engineers to work as conductors is a unilateral change in the terms and conditions of employment of engineers as embodied in the 2015 CBA, and such actions taken during negotiations for amendments to the 2015 CBA are in violation of RLA Section 2, Seventh's requirement that it maintain the status quo while such bargaining continues.

## COUNT III
### (Violation of Section 2, First of the RLA)

24. The allegations of paragraphs 1 through 23 of the Complaint are incorporated by reference pursuant to Fed. R. Civ. P. 10(c).

25. Section 2, First of the RLA, 45 U.S.C. §152, First, states:

> It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any

carrier growing out of any dispute between the carrier and the employees thereof.

26. The continuing acts and conduct by Defendant NSR in changing the status quo terms and conditions of employment of engineers, as embodied in the 2015 CBA, during negotiations for amendments to the CBA are in violation of Section 2, First of the RLA, 45 U.S.C. §152, First, in that Defendant NSR has not exerted every reasonable effort to maintain agreements as to rates of pay, rules and working conditions, nor to settle disputes.

## **IRREPARABLE INJURY**

27. The allegations of paragraphs 1 through 26 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

28. Defendant NSR's violations of its obligations under Sections 2, First, Seventh and Section 6 of the RLA set forth in Counts I-III undermine the RLA's statutory purpose to prevent disruptions to interstate commerce through bargaining in conference between carriers and their employees and, therefore, are contrary to the public interest. As such, there is no obligation on the part of Plaintiff to show irreparable injury because courts may enjoin a violation of the status quo pending completion of the required Section 6 procedures without the customary showing of irreparable injury.

29. In addition to the irreparable injury to the statutory purposes and machinery of the RLA, the illegal and wrongful acts and conduct described under Counts I-III are continuing and, if not enjoined, the Union and engineers it represents will be injured in ways that cannot be measured accurately in terms of money, either as to extent or amount.

30. As a proximate result of the Defendant NSR's unlawful practices:

  a. By means of the aforementioned acts, Defendant NSR has undermined the BLET's status as the exclusive bargaining representative of engineers by unilaterally altering terms and conditions of employment;

  b. The bargaining process will be undermined and the parties effectively prevented from reaching agreement;

  c. Defendant NSR's conduct is contrary to the public interest in stable labor relations and the maintenance of agreements, as well as their orderly change through the RLA's procedures; and

31. The injury being suffered by the public, the BLET and engineers is irreparable and continuing and cannot be recovered in an action at law or in administrative or contractual proceedings.

32. For all the foregoing reasons, Plaintiff BLET and the engineers are without an adequate remedy at law and will suffer serious, substantial, and irreparable injury unless Defendant NSR's unlawful conduct is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

33. Defendant NSR will not be injured by granting of injunctive relief requiring it to comply with its duties under the RLA and to restore the status quo. Defendant NSR is required by statute to address any operational or financial need for changes to existing agreements only through bargaining under the procedures of the RLA.

34. The aforesaid unlawful acts have been threatened and will be committed unless restrained and NSR authorized them with actual knowledge thereof.

35. Substantial and irreparable injury to Plaintiff BLET's property will follow if the injunctive relief is not granted.

36. As to each item of relief granted, greater injury will be inflicted upon Plaintiff BLET by the denial of relief than will be inflicted upon Defendant NSR by the granting of relief.

37. There are no public officers charged with the duty to protect Plaintiff BLET from these actions.

38. Plaintiff BLET has made every reasonable effort to settle such dispute by negotiation.

**PRAYER FOR RELIEF**

Plaintiff BLET requests judgment against Defendant NSR for the following relief:

A. That Defendant NSR and its officers, agents and representatives be ordered to restore the status quo regarding the unilateral change and breaches outlined above, to cease and desist from altering the terms of the 2015 CBA, including ceasing to force engineers represented by Plaintiff BLET to accept conductor assignments, and to adhere to the terms of the 2015 CBA and status quo working conditions unless and until those terms are altered in Section 6 bargaining with Plaintiff BLET;

B. That Defendant NSR and its officers, agents and representatives be ordered to refrain from interfering with, influencing, coercing, or discriminating against engineers represented by Plaintiff BLET, and further be ordered to bargain in good faith pursuant to Section 6 of the RLA;

C. That Defendant NSR be ordered to conspicuously post copies of this Court's order at all locations staffed by engineers for a period of one-hundred eighty (180) days;

D. That Defendant NSR be ordered to provide a copy of this Court's order to every engineer who has been covered under the 2015 CBA, by certified mail at their most current address of record, to ameliorate the effects of Defendant NSR's unlawful conduct on these

employees' rights under the RLA;

E.      That the Court issue preliminary and permanent injunctive relief restoring the status quo and enjoining Defendant NSR and its officers, agents, and representatives from: 1) breaching the 2015 CBA and status quo working conditions; 2) from interfering with, coercing, or discriminating against engineers covered by that CBA; and 3) from negotiating in bad faith with the BLET;

F.      That Defendant NSR be ordered to make engineers adversely affected by the Defendant's violations whole;

G.      That Plaintiff BLET be awarded its costs;

H.      That the Court grant Plaintiff BLET all additional relief that may be equitable, including a reasonable award of attorneys' fees.

Respectfully submitted,

Dates: September 30, 2021

/s/ *Joshua D. McInerney*
Joshua D. McInerney (Ohio 0084355)
James Petroff (Ohio 0042476)
BARKAN MEIZLISH, LLP
4200 Regent Street, Suite 210
Columbus, Ohio 43219
Ph: (614) 221-4221
Fax: (614) 744-2300
jmcinerney@barkanmeizlish.com
jpetroff@barkanmeizlish.com

*Counsel for Plaintiff BLET*

## VERIFICATIONS

I, BLET NS Northern Lines General Chairman Dewayne L. Dehart, pursuant to 28 U.S.C § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the allegations of the foregoing Verified Complaint are true and correct and that I can testify as such based upon personal knowledge in court.

Dated: September 30, 2021

_____
Dewayne L. Dehart, General Chairman

I, BLET NS Southern Lines General Chairman Jerry G. Sturdivant, pursuant to 28 U.S.C § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the allegations of the foregoing Verified Complaint are true and correct and that I can testify as such based upon personal knowledge in court.

Dated: September 30, 2021

_____
Jerry G. Sturdivant, General Chairman

I, BLET NS Eastern Lines General Chairman Randy Fannon, pursuant to 28 U.S.C § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the allegations of the foregoing Verified Complaint are true and correct and that I can testify as such based upon personal knowledge in court.

Dated: September 30, 2021

_____
Rady Fannon, General Chairman